20-2835 from the Southern District of Iowa. Gregory Shepard v. Employers Mutual Casualty Company, et al. Mr. Cawley. Thank you, Your Honor. May it please the Court, I'm Tom Cawley for Appellant Greg Shepard. Mr. Shepard was one of EMCI's largest minority shareholders. In his complaint, Mr. Shepard alleged that EMCI's controlling shareholder, defendant EMCC, and its controlling director, defendant Bruce Kelly, breached their fiduciary duties to Shepard by engaging in conduct that benefited themselves and harmed Shepard in his capacity as an EMCI minority shareholder. As alleged in the complaint, among other things, defendants caused EMCI to enter into a revenue and expense pooling agreement, siphoned profits from EMCI, and gave those profits to EMCC. Under Iowa law, as a controlling majority shareholder, EMCC owed Shepard a fiduciary duty in his capacity as a minority shareholder. Iowa courts look only to whether the majority shareholder controls the corporation. And in the Lynch case, which I think is an important case for this case here, the Iowa Supreme Court first addressed this issue and the court held, quote, our cases have recognized the fiduciary duty of officers and directors in dealing with this corporation that shows the same reasoning supports recognition of a fiduciary duty between a dominant shareholder and minority shareholders. By being in the position to manage corporate affairs and control the board of directors, a majority shareholder is in the same relationship to minority shareholders as the directors themselves. We hold that the majority shareholders do owe a fiduciary duty to minority shareholders. There are several Delaware cases, although not one- But counsel, before you leave Iowa, it's Iowa law that controls, right? That's right, your honor. Okay. Now, has Iowa ever applied, but most of these doctrines, to a publicly traded corporation? No, that case has not come up in Iowa. The cases that the Iowa courts have addressed have been privately held or closely held corporations. But as the treatises that the appellee cites, most of these cases where you have a dominant controlling shareholder arise in the context of closely held corporations. So it's not unusual to see this arise in the case of closely held corporations. Although those treatises also say you can have shareholder suppression in public corporations too. Although usually in public corporations, the ownership interest is so diffused that you don't have a controlling majority shareholder like you do. But the same principle applies. And if you look at the Iowa cases, they don't talk about this being a closely held corporation as opposed to a public corporation. They talk about who controls the director. And if the controlling shareholder is doing that, he owes a fiduciary duty to the minority shareholders. Now, Delaware, which Iowa courts do follow, have recognized this right in connection with public companies. And that's the Sama case and the Gantz case. In the eBay case, although that did involve a closely held corporation, the court there made the point that this fiduciary duty that a majority shareholder owes to a minority shareholder applies across the board to all corporations, although the case there was also a closely held corporation. Defendant's argument... Counselor, doesn't the Delaware Supreme Court essentially say that actions charging mismanagement, which depresses the value of the stock, is a derivative action? They do, but that's not what we're arguing here. We are arguing primarily that what happened here is the majority shareholder controlled the corporation as the majority director to disadvantage the minority shareholders. Now, this was a case of just simple mismanagement. But how? By mismanaging the company, right? Well, Your Honor, I think that those cases, what they talk about is the derivative case, if the mismanagement of the company falls pro rata on all the shareholders. But to the extent that you have a group of shareholders who are disadvantaged disproportionately, that mismanagement, it's viewed in a different context. And also, courts have held that you can have damage to the corporation as well as a right to a minority shareholder. So the mismanagement, sure, the classic case for derivative is a mismanagement of a corporation. But that's typically where the court has held, well, this is really derivative because you're saying that the harm to the shareholders fell to the corporation and it fell on the shareholders proportionately. And that's not the case here. That's not the case that we have. That's not what the complaint alleges. The complaint alleges that the majority shareholder used its position as majority shareholder, as did the majority director, the controlling director, to disadvantage the minority shareholders. And the Delaware courts have said, in that case, you do have a direct cause of action. So going back to this public versus private company or closely held company, the argument that the appellee has advanced is that, well, public companies are liquid and you can sell your shares. And I would submit that public companies can be every bit as illiquid as closely held companies. And that's not a test that has ever been applied to in the courts about how easy a shareholder can get out of the company. And so I don't think that liquidity really defines is a defining issue for public or closely held company companies. But more importantly, it shouldn't be in a public company, a minority shareholder who has been mistreated by the majority shareholder and the controlling director should have recourse to the courts. It's only recourse should not be to sell its shares because it obviously would have to sell its shares at an undervalued price and that would injure the shareholder nevertheless. So it's undisputed here that the MCC was the controlling shareholder of the MCI, an old shepherd, a minority shareholder of fiduciary duty. The second defendant is Director Kelly and Iowa law, which applies here, is consistently held that directors of fiduciary duty both to the corporation and to the shareholders in section 490.831 of the Iowa code. It specifically says that directors may be liable to the corporation and its shareholders. Now, Kelly's argument is that that duty applies to all shareholders, but not to minority shareholders. And that's not supported by the case law, and it really doesn't make any sense. In the Lynch case from the Iowa Supreme Court that I just mentioned, the court there specifically talked about directors owing duties to minority shareholders. And in the Paramount case, the Delaware Supreme Court restated Delaware law when it stated that, quote, minority shareholders must rely for protection on the fiduciary duties owed to them by the directors. The other issue that is before the court involves what is Shepherd alleging as far as the breach of fiduciary duty. Defendants of Apple East incorrectly state that the sole basis for Shepherd's claim is a defendant's bill to promote EMCI, a mismanaged EMCI, and didn't make a profit for EMCI. That's not correct. The complaint also alleges that defendants breached their duty to Shepherd by favoring EMCC, the controlling shareholder, to the detriment of the minority shareholders of EMCI, including Shepherd. And the complaint alleges that Shepherd is owed a duty of care, loyalty, and good faith by the defendants. The complaint alleges that defendants breached those duties by not promoting the interest of EMCC to the detriment of the minority shareholders. And in particular, the complaint alleges that EMCC entered into a pooling arrangement where they would pool the revenues and expenses of two companies, EMCI and EMCC, and then they would share that pooled revenue in a way that had advantaged the majority shareholder, EMCC, and disadvantaged the minority or the company, EMCI. But that harm fell disproportionately on the minority shareholder. So the pooling agreement, as we allege in the complaint, siphoned profits out of the company and gave them to the majority shareholder. In the Bauer case, the Iowa Supreme Court explained that controlling directors and majority shareholders owe duty of care to the minority shareholders. And in the Davis-Eisenhart case, the Iowa Supreme Court held, quote, of course, a majority shareholder may not favor himself to the detriment of the minority. If such wrongdoing occurs, the shareholder may seek recovery for breach of fiduciary duty against the majority shareholder. That's exactly the situation we have here. And the district court never addressed the issue of, which is clearly alleged in the complaint, of a breach of the duty of care, good faith, and loyalty favoring EMCC to the detriment of EMCI. The other issue in the case that the district court did take up was the issue of whether the profitability of EMCI is a fiduciary obligation of the defendants. And we cited cases in our complaint that shows that that's a bedrock principle of for-profit companies. And that's what the Iowa statute defines EMCI in the Iowa Code as a corporation, a for-profit company. And the bedrock principle is that for-profit companies should maximize the profit for the shareholders. The Iowa constituency statute that defendants cite, that relates to takeovers. And that's designed to prevent out-of-court companies from taking over Iowa companies. You can take it when you're talking about a situation of a takeover. You can look at customers and suppliers. But that's not the fiduciary duty that applies on an ongoing company. And it goes back, as we said in our reply brief, that the Dodge versus Ford case, where the court held that there is a fiduciary duty of the fiduciaries of a company to promote the profits of the company. And we cited cases to that effect. And let me just get quickly to the direct versus derivative. There are two tests under the Cunningham case that the Iowa Supreme Court talked about. Special duty and separate distinct injury. And we've alleged a special duty here. The courts in Iowa say that a special duty means it's a right that's extrinsic to the corporation. And this is a right that's extrinsic to the corporation. It's a duty that is owed directly by the defendants to Mr. Shepard as a minority shareholder. And the case that the Iowa Supreme Court decided that is directly on point, well, the holdings are directly on point, is the Reeve case, where the court held that when there exists a special duty to the shareholders, aside from the duties of the corporation, breach of the duty individually harms the shareholders who may be brought in that capacity. And so that is what we're alleging here, that there was a special duty. And also, defendants argue that all shareholders suffered the same injury. And that's not the case here. Shepard suffered a disproportionate injury. We've alleged in the complaint that EMCC benefited from the pooling arrangement. Mr. Kelly benefited from the pooling arrangement. So there's an individual harm to Mr. Shepard that was not suffered by all shareholders. So it's clearly a case where the shareholders did not suffer the same harm. The other argument that defendants make is that the Meade case... Mr. Kelly, doesn't Cunningham say that a duty that a stockholder is owed only by virtue of the fact that he is a shareholder is not a special duty? No. I think what they're saying is, well, they do use the word individual and shareholder, but if you look at the actual test that the court defines, they say if you owe it a special duty, and you're hurt in an individual capacity, as opposed, it is a harm not suffered by other shareholders. It's not the Reeve case, which where there was policyholders there. There are 10 true shareholders here. And in that case, they suffered injury in their capacity as policyholders the same as shareholders. So it's not something that's extrinsic to your position as a shareholder. You can bring in a direct action as a shareholder, either if you're owed a special duty, which is the case here, or if your harm was different from the harm that was suffered by the corporation. And your argument here is that the majority shareholders benefited from this mismanagement because they were able to purchase it at a cheaper price? No. My argument is that they siphoned profits off of the company, and it wasn't mismanagement. We argued that the company wasn't as profitable, but that's largely because the pooling agreement where they pooled together the revenues of the subsidiary, EMCI, and the parent company, EMCC, and then reallocated them, they benefited to the detriment of EMCI. And who's harmed by that? Only the minority public shareholders, because EMCA got the benefit of the pooling arrangement. So this is not a situation where we're arguing that it was mismanagement. At core, what we're arguing is that they had an arrangement where they shared revenues and expenses, where if they would have attributed the revenues of the company due to EMCI, the company would have been more profitable. They pooled the revenues and then allocated the lion's share of the revenues to themselves, and it hurt the company. So it's not truly a mismanagement case. It's siphoning off revenues of the subsidiary. Mr. Cawley, were there other minority shareholders that were injured in the same way? Yeah, there are. Other minority shareholders were injured in the same way. Well, doesn't that then detract from any claim that Shepard's injuries were unique in comparison to those of other shareholders? Well, I think, Your Honor, that the test is whether the injuries he suffered are the same as suffered by all other shareholders, and they weren't. So he can bring his claim as a minority shareholder because the test is whether the same harm was suffered by all shareholders. I'd like to reserve the little time I have left to rebuttal. We ate into your time, so I'll give you a minute on rebuttal. Thank you, Your Honor. Mr. House, the court will hear from you. Thank you very much, Judge. Brian House for Appellee's Employers Mutual Casualty Company and Bruce G. Kelly. May it please the court. The court doesn't need to get into much of what Mr. Cawley just talked about, as the court noted. We don't have to decide these interesting issues of the Delaware law and what the commentators say about these fiduciary duties. We don't have to weigh in on those issues because the direct versus derivative issue is so that Mr. Cawley doesn't allege otherwise. We have Iowa precedent on this issue. We don't have to get into Delaware law. There's no support either in the statutes of Iowa or in the cases that undermine the appellee's position here with respect to this direct versus derivative case. Judge Jarvie analyzed this very carefully under Iowa law and got it exactly right. I feel compelled to start with the Cunningham rule itself, which is that, quote, shareholders have no claim for injuries to their corporations unless within the context of a derivative action. So Mr. Cawley tried to suggest that this really isn't about an injury to EMCI, but this case is all about injury to EMCI. The entire theory is that the appellees fail to maximize EMCI's share price, fail to maximize EMCI's value, depressed EMCI's share price. That's what this case is all about. He says in his complaint on page 24 of the complaint that he seeks to recover in this breach of fiduciary duty lawsuit the difference between EMCI's fair value on the date of the squeeze out, the merger, and what EMCI's fair value would have been if Kelly and So it's clear that we're talking about injury to the corporation. It's also clear that Mr. Cawley said it a couple times that he's suing in his capacity as a shareholder for harm done to him for breach of his of a purported fiduciary duty to him in his capacity as a minority shareholder. This entirely misses the concept of indirect injury. We cite the Angstrom case, the Iowa case, Supreme Court case 1994 that talks about how injury to the company is indirectly an injury to the shareholders and is thus derivative. The exception here, and Mr. Cawley skipped over the exception largely to go to the test, the exception is that a shareholder has an individual cause of action if the harm to the corporation also damaged the shareholder in his capacity as an individual rather than as a shareholder. That language is in Cunningham, it's in the Reif case that Mr. Cawley cited, and that language Mr. Shepard has to run away from it because he is suing in his capacity as a shareholder. Instead they go to these tests, but the tests are there to determine the applicability of the exception, so we can't have the results of the test that don't have anything to do with the exception to Cunningham that we're talking about. I think the court asked the right questions, I mean Mr. Shepard's rights arise by virtue of the fact that he's a shareholder. This idea that Reif gets them anywhere is wrong as well. The phrase extrinsic from the corporation does not mean that you have duties to the corporation and you have duties to the shareholders. Extrinsic from the corporation means more than that. Extrinsic from the corporation means unrelated to the corporation or unrelated to the plaintiff shareholder status as a shareholder, and they just can't meet that test. Another thing about Reif, Mr. Cawley talked about the special duty there. That special duty was plainly derived from the statutes. The Supreme Court of Iowa there said that the statutory steps that a mutual company had to follow to demutualize was the basis of that special duty, so that case doesn't get them anywhere. The argument that they're making would suggest that all of these Iowa Court of Appeals cases that we cited are incorrect because we cited many Iowa Court of Appeals cases in which the courts found no special duty owed to a minority shareholder in very similar circumstances. That's the Redeker case, the Spears case, and the Ahrens case. I think Judge Shepard also hit on the public policy concern, obviously. It can't be that hundreds, thousands, tens of thousands, millions of minority shareholders in Mr. Shepard's position at various public companies around the country all of a sudden have a direct claim against a corporation. That's untenable, and Mr. Shepard doesn't explain how that could be the state of the law. With respect to the separate and distinct argument, I will just say that Mr. Cawley's argument focuses on who benefits versus who's harmed, but that's not the right analysis. The analysis in Cunningham, Cunningham talks about, and I quote, the principle behind Cunningham is that all shareholders suffer in proportion to the number of shares he or she holds, and that principle has been followed in the Redeker case I mentioned. It's been followed in the Taylor versus Hogan case in our briefs, and it's the idea that economic loss is not a separate and distinct injury because it flows to all the shareholders. We struggled to find a case that tried to make the argument that Mr. Shepard's making, and the only one that we could find, we didn't find any in Iowa, the one we found was in the Connecticut Supreme Court, which really hit that on the head and said that's just the wrong analysis. We need to be focusing on the injury to the company, not who may have benefited or who may have arguably benefited, and again, this undermines the Iowa case law that we've been talking about because that's the allegation in most lawsuits, breach of fiduciary suits brought by minority shareholders is that the majority is ganging up on them and trying to benefit at their expense. So again, this would really eviscerate the rule. With respect to, I will note one of the cases that Mr. Cawley mentioned a couple times laying on the, with respect to the duties, to the issue of duties, that is a derivative case. So just to show you how those kinds of cases should be handled. There was discussion about Mead, and this came up in the briefing as well. Mead concerned a different case. Mead is about the merger. This case is not about the merger. The plaintiff in Mead did not assert that the EMCI had even been harmed, and obviously here, as I've laid out, this case is all about purported harm to EMCI. And you know, Judge Jarvie, his decision was distinguished by Mead based on that analysis of the facts were being very different, and that's how the trial court in the Mead case came to the conclusion it came to. I will move on to the other point about the duty to maximize shareholder value. Again, the briefs largely speak for themselves here. This is not an issue of Iowa law. There's no authority for this proposition that there's a duty to maximize value or to a key part of this value maximization proposition. Judge Jarvie properly relied on the constituency statute, as Mr. Cawley points out. You readily concede that that applies to mergers plainly, clearly? I do, Judge, yes. But I agree with Judge Jarvie that it doesn't make a lot of investment. I understand, but why then would the maximization principle apply, you know, in the course of the everyday business? And I think what we heard Mr. Cawley mention, the Dodge Ford case from Michigan, you know, there's no Iowa cases citing the Dodge case from 100 and some years ago in Michigan. I won't belabor the issues. We think that the Delaware cases that are cited are readily distinguishable. And this is not a case, and let's not, he mentioned the eBay case. I just want to be clear. I mean, this is not a case where, like eBay. eBay was a case involving a company that had a not maximized profits. And that's not this case. So we really can't learn much from eBay. Obviously, EMCI was a profit-making enterprise and it did make profits for years and years. To the extent this is a close issue, we don't think that it's something that this court should can decide in a way that makes liability broader. I think we cite the Kingman versus Dillard's case that says where there's a, you know, not much precedent in a situation like this, this court should choose the narrow interpretation that is more restrictive of liability. Next, I'll turn to... Counselor, I have a question for you. Maybe you touched on this earlier when you were commenting about your surveying other cases from around the country, but can you come up with a situation or a hypothetical that would create or would give a minority shareholder a cause of action like this that would be an injury, I guess, an injury separate and distinct from that suffered by other shareholders? Sure. Yes. What's the... As we try to distinguish this, what's on the other side of this? Right. No, I appreciate the question. There are several cases that have contractual issues involved in them as well. And when shareholders have some sort of contractual obligation, whether it's a lending relationship or some other kind of relationship, those are cases where a shareholder can have a direct claim based on those other kinds of relationships that are, again, extrinsic from that shareholder-corporation relationship. One great example is in a case that actually Mr. Shepherd cites, and that's the Ohio case, First National, I think it's First National Bank. In that case, the shareholders were lied to to put their money into the company. They were lied to to get them to go along with a merger. And so in that case, the court said, well, yes, there are direct claims because those individuals were lied to by the majority shareholder. So those were direct claims in that And this is another situation where the law is pretty clear in Iowa that the directors have duties, we acknowledge, but the statutes don't apply any duties to majority shareholders. And the cases, as the court has pointed out, there are no cases that say that in a public company context, a majority shareholder has a fiduciary duty to the shareholder. That case just doesn't exist. All of the cases that we know about suggest to the contrary. All these cases are very clear to say in the closely held company context, including the Bower case that Mr. Cawley cited, was very clear in the reference to this long-standing duty that the court there was referring to closely held companies. The Redeker case we cite mentions this and also Horace. We talked about Horace, the Southern District from Iowa case that also made it to the Eighth Circuit. And in that case, there's also an indication from Judge Gritzner and from this court that yes, there are special differences and that there are partner-like fiduciary duties in the closely held company context, but not in the public company context. It doesn't. The control aspect is different. The disclosure aspect is different. And liquidity is absolutely different. And we think that Judge Jarvie got it exactly right in noting that liquidity is different. What we know about Iowa law under Bower is that the court's concerned about opportunistic behavior and a shareholder's inability to get out, to have liquidity. And that's not the case in a company that's as freely traded as EMCI was and these other public companies are. Let me look, just bear with me one second, look through my notes. Mr. Cawley seemed to suggest that this is not a case about mismanagement, but it really is. This is about how the majority shareholder and Mr. Kelly mismanaged the company and he says siphoned profits away. That's the same as a self-dealing case. It's the same as a misappropriation case. It's a classic derivative case where the defendants allegedly, whether you call it misappropriation or self-dealing, allegedly harmed the company. It's all about harming the company. If they are truly siphoning profits away from the company, they're harming the company. It's a company harm and that requires that this be a derivative claim. I see that my time has expired. Thank you, Mr. House. As I mentioned, Mr. Cawley, we'll give you one minute in rebuttal. Appreciate it, Your Honor. So the test that a case that would be a derivative case is where the injury suffered is in proportion to the number of shares held. That's what he said. That's not the case here and that would be a derivative case and that's your typical mismanagement case where the shareholders suffer pro rata the harm and that is a derivative case in proportion to the number of shares they held. Not here. The siphoner of the profits was the majority shareholder. That makes this case different. The party siphoning the profits was also a shareholder. So there is not a proportionate harm to all the shareholders and as the Reif case said, quote, and the Reif case recognized the individual shareholders because it says when there exists, quote, there exists a duty to the shareholders outside of the duties of the corporation. For each of that duty, individually harms the shareholder and so may be brought in that capacity. And this court in the Heart of America case said a shareholder has a personal interest in a cause of action may bring a suit if the corporation's rights are also implicated. So where a shareholder's harm, a record, and it's not uniformly to all shareholders, that shareholder has a direct claim. Besides that, we have a majority shareholder and a controlling director owed a direct duty and that's another prong of the Cunningham test. Thank you, Ron. Very well, counsel, we appreciate your appearance and argument today. The case will be submitted and an opinion will be issued in due course. Thank you. Thank you.